FILED
2014 JUN -6 AM 11:40
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2014 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>GILBERT MYERS, JR.,<br>　aka "JR Myers,"<br><br>　　　　　Defendant. | CR No. 14- **CR14-0331**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting, Causing an Act To Be Done] |

The Grand Jury charges:

## COUNT ONE

[18 U.S.C. § 1349]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

Defendant MYERS

1.  Defendant GILBERT MYERS, JR., also known as ("aka") "JR Myers" ("defendant MYERS"), was a resident of Atlanta, Georgia. Defendant MYERS promised to provide his clients unlimited travel by airline flights for a year in exchange for payment of an annual fee to defendant MYERS.

///


### Victim Airlines

2.   AirTran Airways ("AirTran") was an airline.

3.   JetBlue Airways ("JetBlue") was an airline.

4.   Spirit Airlines ("Spirit") was an airline.

5.   Sun Country Airlines ("Sun Country") was an airline.

6.   United Airlines ("United") was an airline.

### Non-Revenue Travel

7.   The airline industry utilized non-revenue ("non-rev") seats aboard commercial airliners to reposition flight crews around the country as needed, and as a benefit for employees. Airline employees were often also provided access to these non-rev seats for personal travel. For personal travel, the employee often only needed to pay the taxes on the airfare, and not the airfare itself. Employees were also often provided "buddy passes," which allowed them a limited number of family or friends to whom they could extend this benefit on a limited basis. These seats were all considered "standby" seating aboard flights that were not fully booked with paying passengers.

8.   Many airlines had reciprocal agreements allowing employees of another airline to fly in their non-rev seats. Often these bookings were done last minute (within hours of the flight) by the traveling party at the ticket counter or with the gate agent for the flight. Reservations for these flights and non-rev seats were also made through the airlines' customer service call centers.

### Fraudulent Travelers

9.   Co-conspirators M.N., T.F., and others known and unknown to the Grand Jury were travelers who utilized defendant MYERS' services to fly into and from Los Angeles County airports by pretending to be in-flight crew members on airlines other than the victim airlines

they flew on or attempted to fly on as passengers utilizing non-rev seats ("fraudulent travelers").

### Los Angeles County Airports

10. Burbank Bob Hope Airport ("BUR") is an airport in Burbank, California, in Los Angeles County, within the Central District of California.

11. Long Beach Airport ("LGB") is an airport located in Long Beach, California, in Los Angeles County, within the Central District of California.

12. Los Angeles International Airport ("LAX") is an airport located in Los Angeles, California, in Los Angeles County, within the Central District of California.

### Other Referenced Airports

13. Buffalo Niagara International Airport ("BUF") is an airport located in Buffalo, New York.

14. John F. Kennedy International Airport ("JFK") is an airport located in New York, New York.

15. McCarran International Airport ("LAS") is an airport located in Las Vegas, Nevada.

16. Minneapolis-St. Paul International Airport ("MSP") is an airport located in St. Paul and Minneapolis, Minneapolis.

17. San Diego International Airport ("SAN") is an airport located in San Diego, California.

B. OBJECT OF THE CONSPIRACY

18. Beginning on a date unknown but at least as early as in or about September 2012, and continuing until a date unknown but at least as late as in or about June 2013, in Los Angeles County and Orange County, within the Central District of California, and

3

elsewhere, defendant MYERS, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offense against the United States: wire fraud, in violation of Title 18, United States Code, Section 1343.

C. THE MANNER AND MEANS OF THE CONSPIRACY

19. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a. Defendant MYERS would recruit and book flights for fraudulent travelers by holding himself out as able to provide inexpensive airplane tickets.

b. The fraudulent travelers would contact defendant MYERS, usually by phone, asking to book a flight for themselves to and from desired airports.

c. Defendant MYERS would call the victim airline's reservation call center to book non-rev travel. The victim airline's representative usually asked defendant MYERS for his name, which airline he worked for, his employee identification number, and date of hire. Defendant MYERS, pretending to be the traveler, would usually provide the name of the fraudulent traveler, the fraudulent traveler's date of birth, and the fraudulent traveler's telephone number. Defendant MYERS usually would falsely represent to the airline representative that he worked on the flight crew for another airline, and provided a fabricated date of hire and employee number.

d. Defendant MYERS would then book non-rev travel on the victim airline by requesting availability on flights to and from the fraudulent traveler's desired airports. Once the fraudulent traveler was listed on the standby list for a flight, the reservation agent would provide defendant MYERS with a Passenger Name Record ("PNR"), a

4

six letter code which identified the itinerary for the particular fraudulent traveler.

      e.   Defendant MYERS would then contact, usually by phone, the fraudulent traveler and provided the traveler with the travel information for the fraudulent traveler's flight, including the PNR.

      f.   Defendant MYERS would tell the fraudulent traveler how the fraudulent traveler could avoid detection of the scheme by the victim airlines by dressing appropriately. Defendant MYERS also would coach the fraudulent traveler on how to respond if he was questioned at the airport about his employment status with another airline.

      g.   The fraudulent traveler would then print a boarding pass by accessing the victim airline's on-line check-in site, or by using the automated self-service kiosks at the airport.

      h.   With the boarding pass and photo identification, the fraudulent traveler would go through Transportation Security Administration passenger security screening.

      i.   Once inside the terminal, the fraudulent traveler would then usually either be paged to the counter to receive his seat assignment, or approach the gate counter shortly before the flight departed and request his seat assignment as a standby passenger. The fraudulent traveler would present the gate agent for the victim airline with the standby boarding pass and receive a boarding pass with a seat assignment.

      j.   If the fraudulent traveler was asked about his employment or how he received the non-rev tickets, the fraudulent traveler would lie as instructed by defendant MYERS.

5

        k.    The fraudulent traveler would often contact defendant MYERS giving him updates concerning how his efforts to engage in the fraudulent travel were progressing.

        l.    The fraudulent traveler would board the aircraft listed as an employee of another airline.

        m.    As was reasonably foreseeable to defendant MYERS and his co-conspirators, interstate wires were routinely used to communicate flight and other information between defendant MYERS and his co-conspirators, and also between defendant MYERS, his co-conspirators, and the victim airlines.

D.    <u>OVERT ACTS</u>

    20.    In furtherance of the conspiracy, and to accomplish its object, defendant MYERS, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

<u>CO-CONSPIRATOR M.N.</u>

<u>Overt Act No. 1:</u>

On or about September 27, 2012, defendant MYERS texted co-conspirator M.N. with his bank account information so that M.N. could deposit money into defendant MYERS' bank account.

<u>Overt Act No. 2:</u>

On or about September 28, 2012, co-conspirator M.N., at a Chase Bank branch located in Irvine, California, deposited $2,200 in cash into defendant MYERS' bank account.

<u>Overt Act No. 3:</u>

On or about October 4, 2012, while in Atlanta, Georgia, defendant MYERS texted co-conspirator M.N., informing co-conspirator

M.N. that he was "at airport trying set pass up are u still trying to do the rest of deposit today . . . ."

Overt Act No. 4:

On or about October 6, 2012, defendant MYERS texted co-conspirator M.N. "what your dob," and M.N. then texted his date of birth to defendant MYERS.

Overt Act No. 5:

On or about October 8, 2012, while in Newport Beach, California, co-conspirator M.N. texted defendant MYERS in Atlanta, Georgia, informing defendant MYERS that he was "in the bank now" and "deposit made."

Overt Act No. 6:

On or about October 8, 2012, co-conspirator M.N., at a Chase Bank branch located in Newport Beach, California, deposited $3,000 in cash into defendant MYERS' bank account.

Overt Act No. 7:

On or about October 19, 2012, co-conspirator M.N. texted defendant MYERS that "my friend . . . is calling you about the flight deal.  Also lookn to head to NYC next week Wednesday to Sunday."

Overt Act No. 8:

On or about October 20, 2012, co-conspirator M.N. texted defendant MYERS, informing defendant MYERS of his "need to make reservation for flight to NYC from Long Beach on Jet Blue Tuesday night red eye 9:10p return Sunday night return 6:08p."

Overt Act No. 9:

On or about October 23, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator M.N. on that day from LGB to JFK, by falsely

representing to the JetBlue reservation agent, among other things, that he was M.N. and was employed as an in-flight crew member with Southwest Airlines.

Overt Act No. 10:

On or about October 23, 2012, while in Irvine, California, co-conspirator M.N. printed a standby boarding pass by accessing victim airline JetBlue's on-line check-in site, with the JetBlue's website server located in Beltsville, Maryland.

Overt Act No. 11:

On or about October 23, 2012, when asked at the JetBlue customer service counter at the passenger boarding lounge, inside the secure area of LGB, who he worked for, co-conspirator M.N. said "Southwest," and was then provided with a seat assignment/boarding pass.

Overt Act No. 12:

On or about October 23, 2012, while in Long Beach, California, co-conspirator M.N. called defendant MYERS in Atlanta, Georgia, and told defendant MYERS, "They asked me where I worked."

Overt Act No. 13:

On or about October 23, 2012, co-conspirator M.N. flew on victim airline JetBlue's flight from LGB to JFK utilizing a fraudulently-obtained non-rev seat.

CO-CONSPIRATOR T.F.

Overt Act No. 14:

On or about October 18, 2012, co-conspirator T.F. texted defendant MYERS, "I think my best bet is to buffalo.. There is a 9 pm for jetblue that goes to nyc first."

///
///

Overt Act No. 15:

On or about October 18, 2012, defendant MYERS called victim airline JetBlue and booked flight reservations for a non-rev seat for co-conspirator T.F. starting later that day from SAN and arriving at BUF the following morning, by falsely representing to the JetBlue reservation agent, among other things, that he was T.F. and was a flight attendant with Virgin Atlantic Airways.

Overt Act No. 16:

On or about December 17, 2012, defendant MYERS texted co-conspirator T.F. a PNR for a flight.

Overt Act No. 17:

On or about December 17, 2012, co-conspirator T.F. texted defendant MYERS, "Almost thru security ill call u wen im thru."

Overt Act No. 18:

On or about December 17, 2012, co-conspirator T.F. texted defendant MYERS, "On the plane w a seat thanks again Jr."

Overt Act No. 19:

On or about January 13, 2013, defendant MYERS texted co-conspirator T.F. a PNR for a flight.

Overt Act No. 20:

On or about January 14, 2013, defendant MYERS, from phone number 310-xxx-4854, called victim airline Sun Country and booked a flight reservation for a non-rev seat for co-conspirator T.F. on that day from MSP to SAN, by falsely representing to the Sun Country reservation agent, among other things, that he was T.F. and was a flight attendant with US Airways.

///
///

Overt Act No. 21:

On or about January 14, 2013, co-conspirator T.F. flew on victim airline Sun Country's flight from MSP to SAN utilizing a fraudulently-obtained non-rev seat.

Overt Act No. 22:

On or about June 10, 2013, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator T.F. on that day from LGB to LAS, by falsely representing to the JetBlue reservation agent, among other things, that he was T.F. and was an in-flight crew member with Virgin airline.

Overt Act No. 23:

On or about June 10, 2013, co-conspirator T.F. flew on victim JetBlue's flight from LGB to LAS utilizing a fraudulently-obtained non-rev seat.

Overt Act No. 24:

On or about June 11, 2013, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator T.F. on that day from LAS to LGB, by falsely representing to the JetBlue reservation agent, among other things, that he was T.F. and was an in-flight crew member with Virgin airline.

Overt Act No. 25:

On or about June 11, 2013, co-conspirator T.F. flew on victim JetBlue's flight from LAS to LGB utilizing a fraudulently-obtained non-rev seat.

Other Fraudulent Travelers

Overt Act No. 26:

On or about September 25, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat

for co-conspirator K.S. on that day from LAX to JFK, by falsely representing to the JetBlue reservation agent, among other things, that he was K.S. and was an in-flight crew member with Sprit.

Overt Act No. 27:

On or about September 30, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator M.R. on that day from JFK to LAX, by falsely representing to the JetBlue reservation agent, among other things, that he was M.R. and was a flight attendant with SkyWest Airlines.

Overt Act No. 28:

On or about October 3, 2012, defendant MYERS called victim airline JetBlue and booked flight reservations for a non-rev seat for co-conspirator J.C. on that day from JFK to LAX, by falsely representing to the JetBlue reservation agent, among other things, that he was J.C., was a flight attendant with AirTran, and was traveling for work.

Overt Act No. 29:

On or about October 4, 2012, defendant MYERS called victim airline JetBlue and booked flight reservations for a non-rev seat for co-conspirator K.S. on that day from JFK to BUR, with a return flight from BUR to JFK, by falsely representing to the JetBlue reservation agent, among other things, that he was K.S. and was a flight attendant with US Airways.

Overt Act No. 30:

On or about October 5, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator J.R. on that day from JFK to LAX, by falsely representing to the JetBlue reservation agent, among other things,

that he was J.R. and was a pilot with Sun Country and a co-pilot with Southwest Airlines.

Overt Act No. 31:

On or about October 5, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator M.G. on that day from JFK to LAX, by falsely representing to the JetBlue reservation agent, among other things, that he was M.G. and was an in-flight crew member with Virgin airline.

Overt Act No. 32:

On or about October 7, 2012, defendant MYERS called victim airline JetBlue and attempted to book a flight reservation for a non-rev seat for a non-rev seat for co-conspirator A.L. on that day from JFK to LAX, by falsely representing to the JetBlue reservation agent, among other things, that he was A.L. and was a flight attendant with AirTran.

Overt Act No. 33:

On or about October 8, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator J.L. on that day from JFK to BUR, by falsely representing to the JetBlue reservation agent, among other things, that he was J.L. and was a flight attendant with Spirit.

Overt Act No. 34:

On or about October 10, 2012, co-conspirator J.C. flew on victim Spirit's flight from LAX to LAS utilizing a fraudulently-obtained non-rev seat.

///
///

Overt Act No. 35:

On or about October 18, 2012, defendant MYERS called victim airline JetBlue and booked a flight reservation for a non-rev seat for co-conspirator K.S. on that day from LGB to JFK, by falsely representing to the JetBlue reservation agent, among other things, that he was K.S. and was an in-flight crew member with AirTran.

Overt Act No. 36:

On or about October 27, 2012, co-conspirator J.C. flew on victim JetBlue's flight from Boston to LAX utilizing a fraudulently-obtained non-rev seat.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1343, 2]

21.  The Grand Jury repeats and re-alleges paragraphs one through nineteen of this Indictment as though fully set forth herein.

A.  THE SCHEME TO DEFRAUD

22.  Beginning on a date unknown but at least as early as in or about September 2012, and continuing until a date unknown but at least as late as in or about January 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant MYERS knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victim airlines as to material matters, and/or obtain money and property from these victim airlines by means of material false and fraudulent pretenses, representations, and promises and the concealment of material facts.

B.  INTERSTATE WIRINGS

23.  On or about the dates set forth below, within the Central District of California and elsewhere, defendant MYERS, for the purpose of carrying out the scheme to defraud described above and attempting to do so, caused, and aided and abetted the transmission of, the following items to be transmitted by means of wire and radio communication in interstate commerce:

///
///
///
///
///
///
///
///

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWO | 10/23/12 | Telephone call between M.N., at (949) xxx-9854 in Long Beach, California, and defendant MYERS, at (310) xxx-4854 in Atlanta, Georgia. |
| THREE | 6/12/13 | Telephone call between T.F., at (862) xxx-7489 in Long Beach, California, and defendant MYERS, at (718) xxx-7385 in Atlanta, Georgia. |
| FOUR | 10/01/13 | Telephone call between an Undercover Agent in Long Beach, California, and defendant MYERS, at (718) xxx-7385 in Atlanta, Georgia. |

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

JILL FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

EDWARD E. ALON
Assistant United States Attorney
Major Frauds Section